[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 1302
The petitioner brings this petition for a writ of habeas corpus by way of a Second Amended Petition alleging that his criminal trial attorney, Timothy Pothin, was ineffective in that he allowed him to plead guilty to murder without knowing the lack of strength of the State's case, the defenses available to the petitioner and the probable penalties available after trial.
The incident leading to the arrest and conviction of the petitioner occurred on November 14, 1989 about noon in front of 463 Orchard Street in New Haven. The day before the incident the petitioner had been visiting his aunt, Dora West, on County Street and late that night returned to her home and fell asleep when she was not there. His aunt returned to her apartment early in the morning and found the petitioner asleep and that he had left a loaded firearm out. She attempted to awake him without success and for fear her children would get the firearm, put it in a secure place and left the apartment. When the petitioner awoke and found his firearm missing and his aunt not present, went to find her. He found his aunt in front of the Orchard Street location with one Mimi Arington. He proceeded to assault her to retrieve the weapon and when she escaped, proceeded to assault Arington. Ms. Arington's boyfriend, Eric Williams. who was upstairs, heard the commotion and came down to confront the petitioner. After a brief argument, the petitioner produced a 9 millimeter pistol and fired four shots, hitting Williams twice in the back, once each in the arm and hand, killing him. The petitioner fled to New York and was later found to be incarcerated on an unrelated charge, under an alias, and was brought back to New Haven to stand trial.
The petitioner testified that when he was brought in for trial in November, 1990 he was confused by the choice of going to trial on a murder charge which could result in a sentence of 60 years or taking a plea to murder for 35 years. Having only gone as far as ninth grade in a special education class for slow readers he didn't know what he was doing. He wasn't under the influence of drugs, alcohol or medication but he felt he had to rely on his attorney's advice although he didn't give him any material such as police reports and statements to make that judgment. He felt he should have defenses such as self-defense which he had stated to the police about the incident or extreme emotional disturbance developed by his anger over the loss of his money and firearm on the night before. He expected his attorney CT Page 1303 to interview the witnesses to the event, Dora West, his aunt, Melissa Arington, the victim's girlfriend and William Murphy.
Mr. Pothin testified that he was the third attorney on the file and had gone over the autopsy, the police report, the petitioner's confession, the investigator's notes on the witnesses, the testimony of Melissa Arington as the principal witness at the hearing in probable cause and the statement of William Taylor, a gas station owner who identified the petitioner as the shooter. He told him that his statement to the police made him the shooter but that his claim to have been acting in self-defense was not corroborated by any of the other eye-witnesses and that his claim that Ms. Arington had thrown the gun down the sewer was not confirmed because the police had searched there for it without success. He also told that he was unable to locate William Murphy. On his questioning the petitioner denied having any liquor, cocaine or other drugs or medications that morning. He told him self-defense would be in the case but the jury would have difficulty finding it because the victim was shot in the back and consistent with the petitioner being the aggressor with the gun as described by the eye-witnesses. He felt that the petitioner's flight would complicate self-defense. He also told him that he was faced with the evidence that Ms. Arington was going to testify about the threats about testifying received from him from jail. He told him that concentrating on the affirmative defense of extreme emotional disturbance would be the best viable defense which would result in a finding of manslaughter rather than murder but that the theft of his gun and money might not be considered an event reasonably causing extreme anger. Mr. Pothin said he was ready for trial on the day they were to begin to pick jurors and had brought him street clothes to wear. He was looking forward to the challenge. He found the petitioner likeable with a good knowledge of the proceedings and with whom he had a good relationship. He was surprised when the petitioner told him to reopen plea negotiations — I'm going to plead. The 35 years offer was still available and he took it. He has no memory that the petitioner as he has testified here, had later discussed with him having his plea vacated. If it was the case he would have withdrawn from the case and asked for new counsel to be appointed. He has no memory that occurred.
The court observed the petitioner as he testified and found him to be a self confident individual who could express himself, perhaps not with grammatical precision, but with logical order. Despite his claim of being a slow reader in a special educational CT Page 1304 class, he spoke succinctly and appropriately to the questions without difficulty in understanding them. A perusal of the transcript of his plea is consistent with such analysis. SeeRespondent's Exhibit A. He interrupted only to correct the record as to the fact that his aunt was living in his apartment and not that he was visiting in her apartment. This court finds that his plea was made knowingly, intelligently and voluntarily and that the petitioner has failed in the burden of proof to show otherwise. I can speculate as to reasons for the petitioner to have brought this petition but find that it is unnecessary to do so.
A successful petitioner must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995); Strickland v. Washington,466 U.S. 668, 694. The petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 357.
For the above reasons the court denies the petition.
Corrigan, JTR